IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ROXANNE KIRKLIN, an individual, )
)
)
Plaintiff, )
)
vs. ) Case No. 11-248-FHS
)
SEQUOYAH ENTERPRISES, INC., a )
Domestic For Profit Business )
Corporation, )
)
Defendant. )

**OPINION AND ORDER**

Before the court for its consideration is the Defendant Sequoyah Enterprises, Inc.'s Motion for Summary Judgment and Brief in Support (Doc. 62). The court rules as follows on the motion.

**STANDARD FOR SUMMARY JUDGMENT**

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 ( c) See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact. Celotex v. Catrett, 477 U.S. 317, 325 (1986). If this initial burden is satisfied, the nonmoving party then has the burden of coming forward with specific facts showing there is a genuine issue for trial as to elements essential to the nonmoving party's case. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v.

1

Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party cannot rest on the mere allegations of the pleadings, but must go beyond the pleadings and "set forth specific facts showing there was a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." Applied Genetics v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990).

"A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thomas v. IBM, 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson, 477 U.S. at 248). In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. Deepwater Invs. Ltd. v. Jackson Hole Ski Corp, 938 F.2d 1105, 1110 (10th Cir. 1991). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. With these standards in mind, the court turns to the merits of the Defendant's motion.

## Findings of Facts

Roxanne Kirklin (hereinafter "Plaintiff") began her employment with Sequoyah Enterprises, Inc. as a Habilitation Training Specialist at the Wagoner Group Home in September 2007. On December 1, 2009, Plaintiff was involved in an altercation with a fellow employee. On December 21, 2009, she was given an Employee Warning Notice for a verbal altercation and a possible physical altercation between herself and a co-worker, Barbara Gonzalis. This incident occurred in front of residents in violation of

2

Sequoyah's Code of Conduct and Violence in the Workplace policies. On this same date, the Program Manager reviewed Sequoyah's Code of Conduct and Violence in the Workplace policies with Plaintiff. She was given a copy of both policies. She was informed that any further violations of these policies would not be tolerated and would result in immediate termination of employment. Both Plaintiff and Gonzalis were suspended for three days without pay during Sequoyah's investigation of the events occurring on December 1, 2009. Upon her return to work, Plaintiff was placed on a 90-day probationary period.

Gonzalis was also given an Employee Warning Notice for the verbal altercation and possible physical altercation that occurred on December 1, 2009, between herself and Plaintiff in front of residents. Because this was in violation of Seqouyah's Code of Conduct and Violence in the Workplace policies, the Program Manager also reviewed Sequoyah's Code of Conduct and Violence in the Workplace policies with Gonzales. Upon her return to work, she was given a copy of both policies and informed that any further violations of the policies would not be tolerated and would result in immediate termination of employment.

About a month later, while still on her 90-day probationary period from her previous violation, Plaintiff had additional disciplinary problems. Following an investigation by Defendant, Plaintiff received another Employee Warning Notice dated January 6, 2010, after she refused to assist another co-worker with duties that were required of both staff members for that shift.

Once again, Plaintiff had disciplinary issues. Based on an investigation by Defendant, it was determined that on March 4, 2010, Plaintiff was unprofessional and intimidating to a co-worker.

3

Once again, Plaintiff had disciplinary issues at work. After an investigation, Sequoyah determined that on March 12, 2010, Plaintiff refused to assist co-workers in getting residents ready for work. She stated that she came in to transport, not to get residents ready, feed or change them. She stated it was not her job to do that. Plaintiff began cursing a co-worker in front of the residents. Further, Plaintiff told a resident who was not feeling well to quit faking being sick. Plaintiff told the resident she was lazy and that she was just trying to see what she could get away with. Plaintiff proceeded to tell the resident that if she did not go to work, she (the resident) would have to find someplace else to live. These remarks caused the resident to become visibly upset. During the same time period, Plaintiff was not completing her daily narratives by the end of her shift, as required.

On March 15, 2010, as a result of the above mentioned incidents and because Plaintiff's actions were in violation of her 90-day probationary period and the corrective action plan in her previous Employee Warning Notices, Plaintiff was discharged. Plaintiff was discharged for continuing to be argumentative and unprofessional toward co-workers and residents in violation of the Code of Conduct and Violence in the Workplace policies. The facts reveal Plaintiff had been warned on several occasions regarding her behavior in the work place and she knew the consequences if she continued to violate these polices.

Sequoyah's Human Resources Manager, Christi Miller "Miller" made the final decision to issue each of the Employee Warning Notices to Plaintiff. It was undisputed that all Employee Warning Notices go through her before being issued. Miller also made the

4

decision to terminate Plaintiff's employment.  Miller made the decisions as to all discipline matters.  Miller testified that she approved the recommendation to terminate Plaintiff.  Miller testified that at the time she made the decision to terminate Plaintiff she was not aware that Plaintiff had contacted Adult Protective Services.  Plaintiff stated she contacted Adult Protect Services alleging Sequoyah employees were not properly disposing of discontinued medicine.

The facts reveal Sequoyah did not investigate the claim that Plaintiff contacted Adult Protective Services until after Plaintiff filed her Complaint initiating this lawsuit.  The undisputed facts show it was not until Sequoyah received documents pursuant to a subpoena in connection with this lawsuit on June 26, 2012, that it knew Plaintiff had in fact called Adult Protective Services in March 2010.  The facts reveal that on or about March 4, 2010, Plaintiff contacted Adult Protective Services and voiced a complaint relating to the manner in which Sequoyah's Wagoner facility handled discontinued medications.  When making her report to Adult Protective Services, Plaintiff did not identify any alleged victim, did not report abuse or neglect, and did not report that medication was out where residents could get them and be harmed.  Adult Protective Services told Plaintiff that her complaint related to a "policy issue" within Sequoyah and that Plaintiff should report to Defendant.  Adult Protective Services determined that Plaintiff's report did not meet their criteria for a referral.

Plaintiff acknowledged her receipt of an Employee Handbook relating to her employment in August 2007 and again on July 7, 2009.  The handbook clearly outlines Sequoyah's policies relating to non-discrimination and anti-harassment and the reporting of such

conduct.  During Plaintiff's employment, reports of harassment or discrimination in the workplace were to be made to an immediate supervisor, However, if the employee feels he or she cannot seek help from the Supervisor they are to report the behavior to the Corporate Office, the Human Resources Director or higher-level management. During her employment, Plaintiff never reported or submitted a complaint or grievance that she had been subjected to racial slurs, harassment, discrimination or unfair treatment to Sequoyah's Corporate Office, Human Resources Department, or higher level management.

## I. Title VII and Oklahoma's Anti-Discrimination Act

In order to prevail on her claim for race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of Oklahoma's Anti-Discrimination Act Plaintiff is required to prove that (1) she is a member of a protected class; (2) she was qualified and satisfactorily performing her job; and (3) she was terminated under circumstances giving rise to an inference of discrimination. <u>Salguero v. City of Clovis</u>, 366 F. 3d 1168, 1175 (10th Cir. 2004). If Plaintiff meets her burden of establishing a *prima facie* case, the burden shifts to Sequoyah to articulate a legitimate, nondiscriminatory reason for the termination. <u>EEOC v. Flasher Co., Inc.</u>, 986 F.2d 1312, 1317 (10th Cir. 1992).  If the Defendant meets this standard, the burden shifts back to Plaintiff to provide evidence showing Sequoyah's proffered reasons for the termination are a pretext for racial discrimination. <u>Id</u>. at 1319.

The court finds the Plaintiff cannot meet the *prima facie* case for her claim.  The court finds the undisputed material facts show that Plaintiff's job performance was not satisfactory.  The

6

undisputed facts show at the time of her termination Plaintiff was on a 90-day probationary period which followed several numerous documented inferences of misconduct.

The first Employee Warning Notice was given on December 21, 2009, for a verbal altercation and possible physical altercation that occurred between herself and co-worker Gonzales. This incident occurred in front of residents in violation of the Sequoyah's Code of Conduct and violence in the Workplace policies. As a result of this violation, Defendant reviewed Sequoyah's Code of Conduct and Violence in the Workplace policies with both Kirklin and Gonzales. Both Plaintiff and Gonzales were informed that any further violations of these policies would not be tolerated and would result in immediate termination of employment.

Next, following an investigation by Sequoyah, Plaintiff received an Employee Warning Notice dated January 6, 2010. The Employee Warning Notice was administered to Plaintiff after she refused to assist another co-worker with duties that were required of both staff members for that shift. At the time the Employee Warning Notice was administered to Plaintiff, she was placed on a 90-day probationary period. She was warned that further disciplinary problems could result in termination. During the 90-day probationary period, Plaintiff again violated the Code of Conduct policies. After an investigation, Defendant determined that Plaintiff had once again violated the Code of Conduct when it was determined that on March 4, 2010, Plaintiff was unprofessional and intimidating to a co-worker. In addition, on March 12, 2010, Plaintiff refused to assist co-workers in getting residents ready for work. It was found that Plaintiff stated it was not her job and that she came into transport the residents only. She claimed it was not her job to get them ready, feed or change them.

Plaintiff also began cursing a co-worker in front of the residents. At this same time, Plaintiff told a resident to quit faking being sick that there was nothing wrong with her. Plaintiff told the resident she was just being lazy and seeing what she could get away with. Plaintiff told the resident that if she did not go into work that she would have to find a new place to live. During this same time frame Plaintiff was not completing her daily narratives by the end of her shift, as required.

The above actions by Plaintiff were in violation of her 90-day probationary period. On March 15, 2010, Plaintiff was discharged for continuing to be argumentative and unprofessional toward co-workers and residents in violation of the Code of Conduct and Violence of the Workplace policies. Plaintiff has failed to present a sufficient evidence of a satisfactory job performance at the time of her termination. Based on the undisputed facts of this case, the court finds that Plaintiff has failed to establish a *prima facie* case for discrimination in violation of Title VII or for Burk tort based on a violation of the OADA. Accordingly, this court grants summary judgment in favor of Defendant and against Plaintiff on her discrimination claims under Title VII and under the Burk public policy tort.

## II. Retaliation Claim and 42 U.S.C. Sec. 1981

Plaintiff cannot establish her *prima facie* case for retaliation in violation of Title VII or for her claim pursuant to 42 U.S.C. Sec. 1981.[1] In order to establish a *prima facie* case for

---

[1] The elements are identical for a 42 U.S.C. Sec. 1981 claim and Title VII retaliation claim. Thomas v. Denny's Inc., 111 F.3d 1506, 1513 (10th Cir. 1997).

8

both claims, Plaintiff must prove (1) she is engaged in protected opposition to discrimination; (2) she was subjected to an adverse employment decision; and (3) there is a casual connection and the adverse action. Kendrick v. Penske Transportation Service Inc., 220 F.3d 1220, 1234 (10th Cir. 2000). With regard to Plaintiff's retaliation claim under Title VII, opposition to an employer's conduct is protected only if it is opposition to a practice made an unlawful employment practice by Title VII. Petersen v. Utah Department of Corrections, 301 F.3d 1182, 1188 (10th Cir. 1999). Further, Plaintiff must establish that the individual who took the adverse action against her knew of the employee's protected activity. Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 2002). An employee cannot engage in unlawful retaliation if it does not know that the employee is opposed or is opposing something. Elliot v. American Airlines, Inc., 540 F.Supp. 2d 1203, 1209 (N.D. Okla. 2008). Plaintiff has alleged that she made complaints to her supervisor regarding racial slurs and discrimination, however, there is no evidence of this fact. Plaintiff's self serving allegations are insufficient to overcome a summary judgment motion. Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir.1995). It is undisputed that Miller was the one who made the decision to issue each of the Employee Warning Notices to Plaintiff and to terminate Plaintiff's employment. Plaintiff failed to make any reports to Defendant's human resource department or to Miller of racial discrimination. The undisputed evidence shows that Miller had no knowledge that Plaintiff claimed to have engaged in protected opposition to race discrimination. Plaintiff testified that she only reported the racial slurs to her supervisor and to a consultant for the Defendant. The facts reveal these individuals were not the final decision makers for the Defendant.

Plaintiff was on notice that discrimination, retaliation,

harassment or unfair treatment in her working condition was to be reported to the Corporate Office, Human Resources, Higher Management, in the event that reporting to a direct supervisor proved insufficient. Sequoyah's Employee Handbook, which Plaintiff received, sets forth the policy to report discrimination retaliation or a hostile work environment to the Human resource manager, Christi Miller. Plaintiff simply failed to comply with Sequoyah's policy relating to the reporting of discriminatory and/or retaliatory conduct. Plaintiff simply cannot prove the casual connection between the adverse employment action and her complaints of racial slurs. <u>Kendrick</u> at 1234. As a result, the court finds the Plaintiff cannot establish a *prima facie* case as to her retaliation claim or her 42 U.S.C. Sec. 1981 claim.

### III. Oklahoma Public Policy

Plaintiff has also contended her termination was improper under Oklahoma's public policy and that she is entitled to recover under <u>Burk v. K-mart Corp.</u>, 770 P.2d 24 (Okla. 1989). To recover under this theory, Plaintiff must establish there is a connection between her protected activity and her termination. There is a lack of evidence that any alleged protected activity by Plaintiff resulted in her termination. It is undisputed that Miller, the individual who terminated Plaintiff, was unaware of any alleged protected activity engaged in by Plaintiff. <u>Williams v. Rice</u>, 983 F. 2d. 177-81 (10th Cir. 1993). Accordingly, since Plaintiff cannot establish the necessary connection between her protected activity and her termination, the court grants the Defendant's summary judgment on Plaintiff's <u>Burk</u> claim.

Accordingly, the court grants the Defendant's Motion for Summary Judgment and this action is dismissed in its entirety.

**IT IS SO ORDERED** this 23rd day of May, 2013.

/s/ Frank H. Seay
Frank H. Seay
United States District Judge